_____FILED  _____ENTERED
_____LODGED _____RECEIVED

JAN 1 4 2026

KSC/10.17.25



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

CLERK U.S. ...
DISTRICT OF MARYLAND    DEPUTY

| | | |
|---|---|---|
| *Kim Y. Hagan*<br>*Assistant United States Attorney*<br>*Kim.Hagan@usdoj.gov* | *Suite 400*<br>*36 S. Charles Street*<br>*Baltimore, MD 21201-3119* | *Direct: 410-209-4944*<br>*Main: 410-209-4800*<br>*Fax: 410-962-3124* |

October 20, 2025

*Via email*
David Walsh-Little, Esquire
1014 West 36th Street
Baltimore, Maryland 21211

Re:   United States v. Rodney Allen Farrar
       Criminal No. JRR-24-213

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (the "Agreement") that has been offered to your client, **Rodney Allen Farrar** ("the Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by November 3, 2025, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offense of Conviction

1.   The Defendant agrees to plead guilty to Count One of the Indictment, which charges him with Firearms Trafficking Conspiracy, in violation of 18 U.S.C. § 933(a)(3). The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offense

2.   The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

Count One

That on or about the time alleged in the Indictment, in the District of Maryland, the Western District of North Carolina, and the District of South Carolina:

   a. an agreement existed between two or more persons to ship, transport, or transfer any firearm to another person in or otherwise affecting interstate commerce;

Rev. August 2018

b. the Defendant knowingly entered into that agreement; and

c. the Defendant knew or had reasonable cause to believe that the use, carrying or possession, of a firearm by the recipient would constitute a felony.

## Penalties

3. The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| Count | Statute | Maximum Prison | Man/Min Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| One | 18 U.S.C. § 933(a)(3) | 15 years | N/A | 3 years | $250,000 | $100 |

a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

d. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

e. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay,

and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

### Waiver of Rights

4. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

   a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

   d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

   e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

   f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be

admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

   g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

   h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

   5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

   6. This Office and the Defendant stipulate and agree to the Statement of Facts set forth in **Attachment A**, which is incorporated by reference herein. This Office and the Defendant further agree as follow:

Count One:

   a. This Office and the Defendant agree that the applicable base offense level for Count One is **20** pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2K2.1(a)(4)(B) because multiple firearms involved have large magazine capacity as defined in application note 10.

   b. This offense level is increased by **8** pursuant to U.S.S.G. § 2K2.1(b)(1) because the offense involved 100-199 guns.

      c.      This offense level is increased by **2** under § 2K2.1(b)(4) because 4 of the firearms were stolen. However, because "[t]he cumulative offense level determined from the application of subsections (b)(1) through (b)(4) may not exceed level 29, except if subsection (b)(3)(A) applies," pursuant to (b)(4), the resulting offense level is **29**.

      d.      This offense level is increased by **5** under § 2K2.1(b)(5) because the firearms were trafficked.

      e.      As a result, the adjusted offense level for Count One is **34.**

      f.      This Office does not oppose a **2-level** reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a) based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **1-level** decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

      g.      The final offense level is **31**.

7.      There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level.

8.      Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

### Rule 11(c)(1)(C) Plea

9.      The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence between **96 and 108 months imprisonment** in the custody of the Bureau of Prisons is the appropriate disposition of this case, taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a). This Agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine, or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that, if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by

Rev. August 2018

the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw his plea.

## Obligations of the Parties

10.    At the time of sentencing, this Office and the Defendant will recommend a sentence between **96 and 108 months** imprisonment. The parties may advocate for any period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Waiver of Appeal

11.    In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

    a.    The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

    b.    The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

        i.    The Defendant reserves the right to appeal any sentence that exceeds **108** months; and

        ii.    This Office reserves the right to appeal the sentence of imprisonment if the total term of imprisonment is less than **96 months**.

    c.    The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

12. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

13. The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

14. The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

15. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

### Defendant's Conduct Prior to Sentencing and Breach

16. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

17. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement

will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

<u>Court Not a Party</u>

18. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what Guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

<u>Entire Agreement</u>

19. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Kelly O. Hayes
United States Attorney

*Kim Y. Hagan* (signature)

Kim Y. Hagan
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have

Rev. August 2018

8

reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

_11/24/2025_  
Date

_Rodney Farrar_ (signature)  
Rodney Farrar

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

_November 24, 2025_  
Date

_David Walsh-Little_ (signature)  
David Walsh-Little, Esq.

# ATTACHMENT A
# STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

In December of 2023, special agents for the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) began investigating Co-Conspirator 1 after suspecting that he was trafficking firearms from North and South Carolina to Baltimore, Maryland. During the investigation, agents learned through physical surveillance and transactions with undercover agents that the Defendant, Rodney Allen Farrar, conspired with and aided and abetted Co-Conspirator 1 in the firearms trafficking business. Farrar does not hold a federal firearms license and is prohibited from possessing firearms as he knowingly had been previously convicted of a crime punishable by imprisonment for a term exceeding one year.

During the investigation, Co-Conspirator and Farrar sold an ATF undercover agent (the "UC") the following firearms during controlled recorded transactions that occurred at predetermined locations in Maryland and North Carolina:

| DATE | FIREARMS/CONTROLLED SUBSTANCES |
|---|---|
| 02.16.2024 MD | One (1) Colt Agent .38 special revolver bearing serial number AB02432<br>One (1) Taurus G2C .40 caliber pistol bearing serial number AEB082876<br>One (1) Taurus G2C 9mm pistol bearing serial number AED287466<br>One (1) Smith and Wesson M&P 9 Shield Plus 9mm pistol bearing serial number JRN6756 |
| 02.28.2024 MD | One (1) Glock GMBH 33 Gen 4 pistol bearing serial number BTYV942<br>One (1) SCCY Industries DVG-1 pistol bearing serial number D018176<br>One (1) Ruger P94 pistol bearing serial number 34084519<br>One (1) Smith & Wesson SD9 VE pistol bearing serial number FYC3818<br>One (1) Smith & Wesson M&P 9c pistol bearing serial number HLX0447<br>One (1) Husan Arms MKA-1919 shotgun bearing serial number G2002060<br>One (1) Taurus G3 pistol bearing serial number ADC134421 |
| 03.06.2024 MD | One (1) Palmetto Dagger Compact pistol bearing serial number FG093080<br>One (1) Smith and Wesson SD40 pistol bearing serial number FBB2022<br>One (1) Radical Firearms RF-15 AR-style pistol bearing serial number 2112815<br>One (1) DPMS Panther Arms A-15 rifle bearing serial number DNWC022933<br>One (1) Glock 21 Gen 4 pistol bearing serial number AGKK542<br>One (1) Kel-Tec P-11 pistol bearing serial number AJ299 |
| 03.21.2024 MD | One (1) TISAS 1911 Carry B9 pistol bearing serial number T0620-22AL00583<br>One (1) FN Reflex pistol bearing serial number CCW0006849<br>One (1) Grand Power K100 X-Trim pistol bearing serial number GBA1547<br>One (1) Glock 27 GEN 4 pistol bearing serial number VHE281<br>One (1) Sig Sauer P290RS pistol bearing serial number 26C002759<br>One (1) Smith &Wesson M&P 9 M2.0 pistol bearing NHH0729 |

Rev. August 2018

| | |
|---|---|
| | One (1) Smith & Wesson M&P 40 M2.0 Compact pistol serial number JNK0100<br>One (1) Combat Armory CA19 pistol bearing serial number 99007528<br>Two (2) privately made AR-style pistols with no serial numbers |
| 04.05.2024<br>MD | One (1) Century Arms VSKA Rifle serial number SV7050101<br>One (1) Radical firearms RF-15 pistol serial number 20-052562<br>One (1) Ruger 95 DC chambered in 9mm serial number 311-82892<br>One (1) Glock 43X pistol chambered in 9mm serial number AHYD628<br>One (1) Bersa Thunder chambered in 380 serial number E73394<br>One (1) Taurus PT940 chambered in 40 caliber serial number S1Y76690X<br>One (1) Taurus TCP chambered in 380 serial number 38951B<br>One (1) Taurus G2C chambered in 9mm pistol serial number TMS42975<br>One (1) Rohm RG38 revolver serial number 65284<br>One (1) H&R Model 925 pistol .38 caliber pistol serial number AE42473<br>One (1) Ruger LC9s pistol chambered in 9mm serial number 329-46659<br>One (1) Ruger LCP MAX pistol chambered in 380  serial number 380920469<br>One (1) Palmetto State Armory pistol chambered in 9mm serial number SC901147<br>One (1) Starfire pistol serial number 702591<br>One (1) SAR 9 pistol 9mm serial number  T1102-19BV06433<br>One (1) Sig Sauer SP2022 pistol chambered in 9mm serial number 24D027402<br>One (1) Canik Arms METE MC9 pistol serial number 23CT14985<br>One (1) Grand Power chambered in P11 serial number 9mm MK12GPD0139 |
| 04.30.2024<br>N.C. | One (1) Stoeger 1873 serial number UF5064<br>One (1) Taurus 605 serial number ACM659023<br>One (1) Glock Model 23 pistol .40 caliber serial number BCXU930<br>One (1) Tristar Model T100 serial number 16AK00617<br>One (1) Springfield Armory Model XDS9 pistol serial number S3809818<br>One (1) Tristar Model C100 pistol serial number 16AK00617<br>One (1) Glock Model 27 .40 caliber pistol serial number VHE296<br>One (1) Glock Model 27 .40 caliber pistol serial number SHX227<br>One (1) Glock Model 19 .40 caliber pistol serial number BDUT117<br>One (1) Beretta Model CORTC-M1934 serial number 609113<br>One (1) SCCY Model CPX2 pistol serial number 664340<br>One (1) Glock Model 42 pistol serial number ACFA021<br>One (1) Ruger Model P94DC pistol serial number 308-55509<br>One (1) High Standard Model Sentinel MK2 revolver serial number H18543<br>One (1) Smith & Wesson Model M&P 40 pistol serial number DWS5394<br>One (1) GSG Model 1911 pistol serial number A845161<br>One (1) Diamondback Arms Model DB15 rifle serial number DB1917802<br>One (1) Harrington & Richardson Model 732 pistol serial number AJ61550<br>One (1) KelTec Model P32 pistol serial number 609113 |
| 05.14.2024<br>MD | One (1) Sig Sauer P250 pistol serial number EAK179394<br>One (1) Shadow Systems CR920 pistol serial number S023914<br>One (1) CZ P-10F pistol serial number UB17492<br>One (1) Glock 26 pistol serial number BWHV623<br>One (1) Taurus 85 .38 special revolver serial number EA41599 |
| 05.30.2024 | One (1) Canik TP9SF chambered in 9mm serial number T6472-19AT01156 |

Rev. August 2018

11

| | |
|---|---|
| N.C. | One (1) Ruger Security Nine chambered in 9mm serial number 381-73127<br>One (1) Glock 22 40 S&W serial number YDP093<br>One (1) CZ 2075 Rami chambered in 9mm serial number B045936<br>One (1) Springfield Armory XD9 chambered in 9mm serial number BA719022<br>One (1) Taurus G2C 9 chambered in 9mm serial number TLP16970<br>One (1) Taurus G3C 9 chambered in 9mm serial number ADB021445<br>One (1) Llama Minimax 45 serial number 71-04-03324<br>One (1) Springfield XDM9 chambered in 9mm MG739705<br>One (1) Shadow Systems MR920 chambered in 9mm serial number SSC020857<br>One (1) Palmetto State Armory Dagger chambered in 9mm serial number CD019426<br>One (1) Taurus G3 chambered in 9mm serial number ADE342078<br>One (1) FSAAP FR-16 (AR Pistol) chambered in 5.56/223 serial number A02833<br>One (1) ZRODELTA Ready Series (AR Pistol) serial number ZAR09973<br>One (1) Sig Sauer P320 chambered in .357 SIG serial number 58C033199<br>One (1) Glock 43 chambered in 9mm serial number ABSS627<br>One (1) SCCY CPX1 chambered in 9mm serial number 706867<br>One (1) Colt Double Eagle MK2-Series 90 serial number DF04166<br>One (1) Taurus G3XL chambered in 9mm serial number ADB943348<br>One (1) Llama Unknown Model chambered in .380 Auto serial number A37468<br>One (1) Sig Sauer P250 chambered in 9mm serial number 57C003744 |
| 06.05.2024 MD | One (1) Wilson Combat pistol frame serial number M18100154 with Sig Sauer P320 slide<br>One (1) Smith & Wesson M&P9 with obliterated serial number<br>One (1) Glock 27 Gen 4 pistol serial number SHX228<br>One (1) Beretta APX serial number A203938X<br>One (1) Taurus PT908 pistol serial number TOD64999 |

Farrar admits that at least three of the firearms sold to the UC during transactions in which Farrar participated were stolen. Farrar admits that several of the firearms sold to the UC are semiautomatic pistols capable of accepting a large capacity magazine that can hold more than 15 rounds of ammunition.

During the investigation, the UC advised Co-Conspirator 1 and Farrar that the UC was illegally trafficking firearms and that the firearms purchased by the UC were to be shipped to New Jersey and sold to individuals who could not lawfully purchase firearms. During the April 30, 2024, transaction in North Carolina, the UC placed an order for several Draco assault pistols with Farrar, who told the UC that he could obtain large quantities of them. When asked by the UC if it was easy to obtain firearms in North Carolina, Farrar responded, "Somewhat in a way. It's kind of fifty-fifty, I mean you can get it down here, but sometimes we've got to move around and go to different states and things ... we got whoever we deal with in different states." Farrar further admits that he knowingly entered into an agreement between two or more persons (including Co-Conspirator 1) to ship, transport, or transfer any firearm to another person in or otherwise affecting interstate commerce. He also knew that the firearms sold to the UC were to be trafficked to another state where the firearms would be illegally sold and knew or had reasonable cause to believe that the use, carrying or possession, of a firearm by the recipient would constitute a felony.

All events occurred in the District of Maryland.

SO STIPULATED:

_____
Kim Y. Hagan
Assistant United States Attorney

_____
Rodney Farrar
Defendant

_____
David Walsh-Little, Esq.
Counsel for Defendant

Rev. August 2018